IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA,

v.

JOHN NATHAN ETZEL,

Defendant,

Case No. 6:17-cr-00001-AA

**ORDER AND OPINION**

---

AIKEN, District Judge:

Now before the Court is defendant John Etzel's Amended Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (doc. 54)[1] Specifically, defendant requests that his sentence be reduced immediately to one of time served and that his conditions of supervised release be amended to include a term of home confinement with a 14-day quarantine period. This motion is based on the First Step Act of 2018

[1] On March 30, 2020, defendant filed a similar motion *pro se*. (doc. 51). After reviewing that motion, the Court appointed the Federal Public Defender to represent defendant in this matter. (doc. 54). On April 15, 2020, defendant, though his attorney filed an Amended Motion pursuant to § 3582(c)(1)(A)(i)

("FSA"). Pub. L. No. 115-391, 132 Stat. 5194 (2018). The FSA allows prisoners to petition courts for sentence modifications, after exhausting administrative procedures, based on extraordinary and compelling reasons—a process also known as compassionate release. For the reasons set forth below, the motion is GRANTED.[2]

**BACKGROUND**

Defendant previously pleaded guilty pursuant to a plea agreement for one count of Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(l), (b)(l)(B)(viii) and one Count of Felon in Possession of a Firearm 18 U.S.C. § 922(g)(l). On September 21, 2017, this Court sentenced defendant to 96 months in Bureau of Prisons ("BOP") custody on both Count 1 and Count 2 of the information to run concurrently with each other. The Court also imposed a four-year term of supervised release.

Defendant has been in custody since May 27, 2015. Consequently, he has served approximately 59 months of his original sentence. When adding in his good time credit earned, defendant has served the equivalent of an approximate 66-month sentence. Defendant is currently held at FCI Sheridan in Oregon, and BOP records indicate that his current projected release date is March 21, 2022. Def. Am. Mot. for Release at 3.

On March 30, 2020 defendant applied for compassionate release under 18 U.S.C. 3582(c)(1)(a) to the Warden at FCI Sheridan. On April 2, 2020, the Federal

---

[2] The Court heard argument on this matter on April 30, 2020. During that hearing the Court granted the motion with an opinion to follow.

Public Defender for the District of Oregon also wrote to the warden and requested compassionate release on defendant's behalf. While there are no records of a formal denial, the warden has not granted those requests to date.

**STANDARD**

A federal district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see, *Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Compassionate release provides an exception in rare cases. *United States v. Holden*, 2020 WL 1673440, at *2 (D. Or. Apr. 6, 2020). Section 3582(c)(1)(A) provides that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; [...]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The Policy Statement issued by the United States Sentencing Commission, § 1.B.1.13 of the U.S. Sentencing Guidelines, was last amended in November 2018 before the FSA was passed. Application Note 1 to § 1B1.13 identifies extraordinary and compelling reasons in four categories: 1.) the medical condition of the defendant, 2.) age of the defendant, 3.) family circumstances, and 4.) other reasons, as

determined by the Director of the BOP, in a defendant's case amounting to an extraordinary and compelling reason, "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n. 1(A)–(D).

The Policy Statement also requires a finding that "the defendant is not a danger to the safety of any other person or to the community provided in 18 U.S.C. § 3142(g)."[3] § 1B1.13(2)

Finally, the Policy Statement notes that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)." *Id.* n.4.

A defendant seeking a reduction in his terms of imprisonment bears the burden to establish both that he has satisfied the procedural prerequisites for judicial review and that compelling and extraordinary reasons exist to justify compassionate release. 18 U.S.C. § 3582(c)(1)(A).

**DISCUSSION**

For the Court to exercise its authority under 18 U.S.C. § 3582(c)(1)(A) to reduce defendant's sentence it must 1.) find the appropriate administrative remedies were exhausted and the statutorily prescribed time period has passed, 2.) find that

[3] Section 3142(g) identifies the following factors a court must consider in determining whether conditions of release will reasonable assure the safety of any other person and the community: 1.) the nature and circumstances of the offense charged, 2.) the weight of the evidence against the person, 3.) the history and characteristics of the person, and 4.) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

extraordinary and compelling reasons exist for a sentence reduction, 3.) consider the sentencing factors under 18 U.S.C. § 3553(a), and 4.) ensure any reduction is consistent with applicable policy statements from the sentencing commission.

Initially, the Court notes that defendant filed an application for compassionate release on March 30, 2020. More than thirty days have passed since defendant submitted his request to the warden at the facility where he is confined. *See Brown v. United States*, 411 F.Supp.3d 446, 452 (S.D. Iowa 2019) ("Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it.") (internal citations omitted). Thus, the present motion is properly before this Court.[4]

Next, the Court considers whether extraordinary and compelling reasons warrant a sentence reduction in this case. The Court finds that the scenario provided in U.S.S.G. § 1B1.13 cmt. N. 1(A)(ii), in combination with cmt. N. 1(D), applies in this case. Under § 1B1.13 cmt. N. 1(A)(ii), extraordinary and compelling reasons exist, *inter alia*, when "the defendant is suffering from a serious physical or medical condition, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

---

[4] Though not before the Court, the Court would likely find that the 30-day period provided under § 3582(c)(1)(A) would not necessarily bar the Court from considering the motion. *See United States v. Ben-Yhwh*, ____ F.Supp.3d ____, 2020 WIL 1874125, at *2-3, (D. Haw. April 13, 2020) (Judge Kobayashi discussing bases for waiver of the exhaustion requirement for compassionate release and finding that they applied in that case.)

Alternatively, § 1B1.13, as currently written, would not constrain this Court's ability to find extraordinary and compelling reasons here. As the Sentencing Commission's policy statement was not amended after enactment of the FSA "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" … "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020); (citing *Brown*, 411 F. Supp. 3d at 447, 499 (canvassing district court decisions)); *see also United States v. Redd*, 2020 WL 1248493, at *6. (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purposes of satisfying the ["FSA's] 'consistency' requirement, an 'applicable policy statement.'")

The Court is persuaded by the reasoning of numerous other district courts and holds that it is "not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn, Mar. 4, 2020); *see also United States v. Perez*, , 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it.")

The Court acknowledges the global crisis caused by the 2019 novel Coronavirus ("COVID-19"). The pandemic has killed thousands, sickened millions, and disrupted stability and security in the lives of billions. Americans are inundated daily with

news of the spread of this highly contagious and deadly virus. As of the order granting defendant's release, there have been more than 3 million reported cases worldwide. Coronavirus COVID-19 Global Cases, CENTER FOR SYSTEMS SCIENCE AND ENGINEERING AT JOHNS HOPKINS UNIVERSITY, https://coronavirus. jhu.edu/map.html (last visited Apr. 30, 2020, at 2:32 P.M.). More than 1 million of those cases have occurred in the United States. *Id.* Over 230,000 deaths around the world have attributed to the virus, nearly 60,000 of which have been reported in this country. *Id.* Further spread of infection and death are likely. Across the world, government and private institutions alike were unprepared for this outbreak or its ramifications. In the United States, "the President has declared a National Emergency due to the spread of the novel coronavirus and states and localities across the nation have implemented measures to stymie its rapid spread." *United States v. Muniz*, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020)

Prisoners are particularly vulnerable to infection. Center for Disease Control, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020), https://www.cdc.gov/ coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. Defendant is unable to adequately follow social distancing guidelines to avoid the spread of infection.

Defendant argues that his health condition is fragile, making him acutely at risk given the current spread of COVID-19. It is undisputed that the defendant suffers from hypertension, Hepatitis C, coronary and cardiac issues, and he complains

of chronic bronchitis. It is well documented that these underlying issues, particularly hypertension and coronary diseases are associated with increased risk of infection and worse outcomes in lung injury and mortality. *See* Ernesto L Schiffrin, John M Flack, Sadayoshi Ito, Paul Muntner, & R Clinton Webb, Hypertension and COVID-19, American Journal of Hypertension, Volume 33, Issue 5, May 2020, at 373–374.[5] Defendant's advanced age and history of respiratory problems also puts him at higher risk of complications should he contract the disease.

Also, defendant noted that he suffers from ongoing and deteriorating urinary issues stemming from a past genital mutilation and resulting necrosis. At oral argument, it was revealed that he needs a urethrotomy surgery to treat this condition but has grave concerns about undergoing the procedure while in BOP custody given current circumstances. He reports that he has been on a near constant regimen of various antibiotics since entering custody, which have become less effective as time has progressed. He has resources from the Veterans Administration and plans to address the issue surgically once he is released. At oral argument the government noted that defendant had likely "crossed the bar" regarding significant health concerns.

Here, defendant has shown that he is particularly vulnerable to COVID-19. While there have been no identified cases of COVID-19 at FCI Sheridan, infection

[5] "The most common comorbidities in one report were hypertension (30%), diabetes (19%), and coronary heart disease (8%).") Another report showed that the most frequent comorbidities in patients with COVID-19 who developed the acute respiratory distress syndrome were hypertension (27%), diabetes (19%), and cardiovascular disease (6%)" *Id.*

can spread with deadly speed. For example, some other BOP institutions, such as FCI Terminal Island have seen out breaks grow into hundreds of confirmed cases in a matter of weeks. https://www.latimes.com/california/story/2020-04-29/coronavirus-terminal-island-prison-inmates-outbreak.

Considering the above information, the Court concludes that defendant is suffering from a serious medical condition which significantly diminishes his ability to provide self-care in the environment where he is held. *See United States v. Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) Defendant has shown that he is individually at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that defendant has demonstrated an extraordinary and compelling reason for compassionate release.

The Court is persuaded that the applicable § 3553(a) factors[6] support defendant's request for compassionate release and that defendant will not pose a threat to the community under § 3142(g). The Court acknowledges the seriousness of defendant's offenses. However, defendant has been in custody since 2015 and has had not had any disciplinary issues during that time. The effective 66-month sentence, over 70% of his total sentence, adequately expresses the seriousness of the

[6] In imposing a sentencing which is sufficient, but not greater than necessary the Court considers *inter* alia, the nature and circumstances of the offense, the history and characteristics of the defendant, community safety, the kinds of sentences available, the need to avoid unwanted disparities in sentencing, and all other obligations of sentencing including punishment, deterrence, and rehabilitation. 18 U.S.C. § 3553(a).

offense, deters criminal conduct, and protects the public under § 3553(a). The Court also considers defendant's testimony at oral argument. Particularly noteworthy is the work he has done to begin an apprenticeship program with the Oregon Bureau of Labor and Industries as an electrician as well as his participation in rehabilitative programming. As detailed above, the Court finds defendant's serious medical conditions are a significant factor which warrants a reduction of the sentence. Finally, the Court finds that "[t]he benefits of keeping [defendant] in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave." *United States v. Perez*, 2020 WL 1546422 at *4 (S.D.N.Y. Apr. 1, 2020)

While defendant has a long history of noncompliance with the law, he has a positive record during this period of incarceration. As incarceration is meant to be both punitive and rehabilitative, the Court finds defendant's statements that he will wisely use the time he has left to him to be credible.[7] The Court is satisfied that defendant is now prepared to comply with the terms of his supervised release.

While the Court does not find that defendant will be a danger to the community, the Court does take the government's concerns about ensuring his compliance seriously. To that end, the Court will impose a term of home confinement and enhanced search provisions.[8] While defendant requested that any term of

[7] This Court has long advocated for shorter in-custody sentences and longer terms of supervision with real services to address criminogenic issues as a way to meet this goal.

[8] Defendant noted that he had no objections to such conditions at oral argument.

confinement be limited to six months, the Court will instead impose home confinement equal to the remaining time on his in-custody sentence. The Court will consider reducing that amount of time should defendant meet his obligations and prove that he is serious about building a productive and law-abiding life.

Accordingly, the Court shall order that defendant be placed on home confinement until March 21, 2022. He shall also be subject to a curfew at the discretion of his supervising probation officer. Further, defendant plans to work in property management after he is released. Given the circumstances surrounding his last conviction, the Court shall also impose an enhanced search condition requiring defendant to allow officers to search any properties or storage containers to which he has access. Should the defendant fail to follow this or any other condition of release, the Court can fashion an appropriate sanction which could include further incarceration. As the Court explained on the record, should he be taken back into custody, defendant may not have any alternatives to being held in custody at BOP correctional institutions.

Because of his serious medical conditions, the nature of his original offense, his record while in BOP custody, and the length of time already served, the Court is persuaded that defendant will not pose a threat to the community.

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court finds that extraordinary and compelling reasons warrant a reduction of defendant's sentence, that defendant does not pose a danger to any other person or the community, that the § 3553(a) factors support a reduction, and that the reduction is consistent with currently applicable U.S. Sentencing Commission policy statements. The Court therefore GRANTS Defendant's Amended Motion for Compassionate Release. (doc. 54) A further status conference shall be set approximately 30 days from the date of this Order.

IT IS SO ORDERED.

Dated this 1st day of May 2020.

/s/Ann Aiken
Ann Aiken
United States District Judge